IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA CALKINS, an individual<br><br>    Plaintiff,<br><br>  v.<br><br>PLAYBOY ENTERPRISES INTERNATIONAL, INC., a corporation doing business as Playboy Magazine; and COLLEEN SHANNON, an individual,<br><br>    Defendants.<br>_____ / | No. 2:06-CV-2435 JAM DAD<br><br>**<u>Order Granting Playboy Enterprises International Inc.'s Motion for Summary Judgment</u>** |

    Plaintiff Carla Calkins ("Calkins") brought this action for copyright infringement against defendant Playboy Enterprises International, Inc., a corporation dba Playboy Magazine ("PEI"), and Colleen Shannon ("Shannon") under the Copyright Act, 17 U.S.C. § 106.  PEI now moves for summary judgment.  Calkins

opposes the motion.  For the reasons stated below, the Court GRANTS the motion.[1]

### I. UNDISPUTED FACTS

The Court finds the following facts to be undisputed. Calkins and her husband Robert Calkins ("Mr. Calkins") are the owners of a photography studio known as Mother Lode Photography ("Mother Lode").  Def.'s Undisputed Material Fact ("UMF") ¶ 1. Mother Lode specializes in individual portraits, family portraits, weddings and high school senior portraits.  Id. ¶ 2. In 1996, Mr. Calkins, on behalf of Mother Lode, photographed Shannon while she was a high school senior.  Id. ¶ 5.  Following this photo session, Shannon ordered the "deluxe session" package from Mother Lode, which included indoor and outdoor portraits. Id. ¶ 5.  Neither Shannon nor anyone else has ordered reprints of Shannon's senior portraits since they were created in 1996. Id. ¶¶ 10, 44.

In December 2003, a reproduction of one of Shannon's senior portraits ("Photograph") appeared in the January 2004 50th Anniversary edition of Playboy Magazine ("Playboy"), Def.'s UMF ¶¶ 11, 13, without Calkins' permission.  Pl.'s UMF ¶ 1.  The image, approximately 1¾ by 2¼ inches, is a reproduction of a waist-up shot of Shannon lying in a public field.  Def.'s UMF ¶¶

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 78-230(h).

5, 8-9, 22-23, 29.  The image appeared on the biography page (a.k.a. Playmate data sheet) of Playboy's centerfold feature, which also contained three other photographs of Shannon as well as a handwritten biography prepared by Shannon.  Id. ¶¶ 15-16, 20-21.  The Photograph was not substantially altered before it was reproduced by PEI, except that it was reduced in size and "cropped" a little (i.e., the edges of the Photograph were eliminated or trimmed).  Pl.'s UMF ¶¶ 6, 9, 23.  According to Gary Cole ("Cole"), PEI's photography director, the purpose of the Playmate data sheet is to personalize each Playmate by providing insight into their life, including how they grew up and what their interests are.  Def.'s UMF ¶¶ 17-19.[2]  Mr. Cole testified that he believed the Photograph was a personal photograph belonging to Shannon because it did not appear to have been created by a professional photographer.  Id. ¶¶ 28-31. Calkins testified that while it is Mother Lode's practice to affix a copyright sticker to each of its photographs, she acknowledges that this practice was not always followed.  Id. ¶¶ 32-33.  Calkins, for instance, does not allege that a copyright

---

[2] To the extent that Calkins contends that Mr. Cole's deposition testimony is inadmissible hearsay, the court rejects this contention.  While deposition testimony is ordinarily hearsay when submitted at trial, it is not hearsay in a summary judgment motion.  See Surrell v. California Water Service Co., 518 F.3d 1097, 1107 (9th Cir. 2008); Orr v. Bank of America, NT & SA, 285 F.3d 764, 779 n. 27 (9th Cir. 2002).

sticker was affixed to the photograph at issue in this case. Id. ¶ 34.

In February 2004, the Photograph was registered with the Copyright Office under Mr. Calkins' name, and a Certificate of Registration was issued on February 5, 2004.  Def.'s UMF ¶ 63. Calkins concedes that the copyright registration erroneously listed the date in which the Photograph was developed, May 15, 1996, as the date of publication, and that she has made no effort to correct this error.  Id. ¶¶ 65-66.  On July 20, 2005, Mr. Calkins allegedly transferred the copyright to the Photograph and all the rights related to ownership of the copyright, past, present, and future, to Calkins.  Id. ¶ 67.  On November 2, 2006, Calkins filed an action for copyright infringement against PEI and Shannon.  Docket at 1.  On March 5, 2008, PEI filed its motion for summary judgment.  Docket at 23.

## II. OPINION

**A.   Legal Standard**

Rule 56(b) permits a party against whom a claim has been asserted to "move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed.R.Civ.P. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

4

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324 (citing Fed.R.Civ.P. 56(e)). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id. Summary judgment is appropriate if, viewing the evidence and the inferences therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

**B.   Copyright Infringement**

PEI argues that summary judgment is appropriate with respect to Calkins' copyright infringement claim because PEI's

use of the Photograph is a "fair use" as set forth in 17 U.S.C. § 107.

"The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her exclusive rights to reproduce, distribute, and publicly display copies of the work." Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 799 (9th Cir. 2003) (internal quotation marks omitted).  "A prima facie case of copyright infringement by reproduction is established by showing ownership by the plaintiff and copying by the defendant."  Id.  A copyright owner's exclusive rights, however, are subject to statutory exceptions, including the exception for "fair use."  Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1151 (9th Cir. 1986) (citing 17 U.S.C. §§ 106, 107); see also Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701, 715 (9th Cir. 2007) (even if a plaintiff makes a prima facie case of direct infringement, the defendant may avoid liability if it can establish that its use is a "fair use" as set forth in § 107).[3]  "The fair use doctrine confers a privilege on people other than the copyright owner 'to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner.' "  Id.  In

---

[3] Section 107 provides in pertinent part: "Notwithstanding the provisions of section 106, the fair use of a copyrighted work . . . is not an infringement of copyright."  17 U.S.C. § 107.

determining whether a use is fair, courts engage in a case-by-case analysis and a flexible balancing of the following four non-exclusive factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  Mattel, 353 F.3d at 800 (citing 17 U.S.C. § 107); Hustler, 796 F.2d at 1151-52.  Because fair use is an affirmative defense, PEI carries the burden of demonstrating it.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994).  Where material facts are not in dispute, fair use is appropriately decided on summary judgment.  Mattel, 353 F.3d at 800.

In the present case, PEI does not argue that Calkins cannot establish a prima facie case of copyright infringement; rather, PEI argues that its use of the Photograph is a "fair use" under the factors set forth in § 107.  Thus, the question before the court is whether PEI's use of the Photograph is a "fair use."

**1. Purpose and Character of the Use**

The first factor in a fair use inquiry requires the Court to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit

educational purposes." 17 U.S.C. § 107(1). The "purpose and character of use" factor in the fair use inquiry asks whether the work's purpose was for profit or not for profit and to what extent the new work is transformative and does not simply "supplant" the original work. Mattel, 353 F.3d at 800. Although not controlling, the fact that the work is used for a commercial or profit-making purpose as opposed to a non-profit purpose, weighs against a finding of fair use. Elvis Presley Enterprises, Inc. v. Passport Video, 349 F.3d 622, 627 (9th Cir. 2003). And the degree to which the new user exploits the copyright for commercial gain-as opposed to incidental use as part of a commercial enterprise-affects the weight afforded to commercial nature as a factor. Id.; see also Hustler, 796 F.2d at 1152 (The critical issue is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.).

The second, and more important, inquiry under this first factor is to determine whether and to what extent the new work is "transformative." Perfect 10, 487 F.3d at 720 (citing Campbell, 510 U.S. at 579); see also Elvis Presley Enterprises, 349 F.3d at 628 (the "transformative" nature of the new work is the most important inquiry under the first fair use factor). "A work is 'transformative' when the new work does not 'merely

supersede the objects of the original creation' but rather 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' " Perfect 10, 487 F.3d at 720 (citing Campbell, 510 U.S. at 579); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818 (9th Cir. 2003). The more "transformative" the new work, the less the significance of other factors that weigh against fair use, such as use of a commercial nature.  Campbell, 510 U.S. at 579; Elvis Presley Enterprises, 349 F.3d at 628.

   In the present case, the Court finds that the Photograph was used for a commercial purpose inasmuch as PEI is a for-profit enterprise and the Photograph appeared in Playboy. However, the Court further finds that the use of the Photograph was incidental and less exploitative in nature than more traditional types of commercial use insofar as PEI was neither using the Photograph to directly promote sales of Playboy, nor trying to profit by selling the Photograph.  See Kelly, 336 F.3d at 818.  It is undisputed that the Photograph was reproduced as part of the centerfold feature of Playboy and was not advertised on the cover, nor made evident to prospective purchasers of Playboy.  Thus, it does not appear that the Photograph was reproduced by PEI for the purpose of making a profit without paying the customary price.  There is no evidence before the Court indicating that PEI profited from the use of the

9

Photograph.  Indeed, the Photograph was merely one of hundreds of photos appearing in the January 2004 50th Anniversary edition of Playboy.  Therefore, while Playboy is published for profit and the use of the Photograph contributed to its entertainment value, the manner of commercial use in this case does not weigh strongly against a fair use determination.  See id.

Moreover, while the mere commercial use of copyrighted material generally weighs against a finding of fair use, it does not end the inquiry under this factor.  Rather, the Court must consider whether and to what extent the new work is transformative.  In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, the reproduced image was much smaller and served an entirely different function than the original image.  Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends, Def.'s UMF ¶ 45, while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and what her interests are.  Def.'s UMF ¶¶ 17-19.  Thus, because PEI used the Photograph in a new context to serve a different function (inform and entertain Playboy readers) than the original function (gifts for family and friends), PEI's use did not

supersede the function of the original Photograph, and therefore PEI's use is transformative.  See Kelly, 336 F.3d at 818-19; see also Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22-23 (1st Cir. 2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain).  Indeed, the reproduced image is not a suitable substitute for someone who wishes to use the Photograph as a gift because the image is significantly smaller and of lesser quality than the original Photograph.  In other words, it is unlikely that Playboy readers would use the reproduced image for the original purpose for which it was created.  Accordingly, because the transformative purpose of PEI's use of the Photograph is considerably more important than the fact that PEI used the Photograph as part of a for-profit enterprise, the first fair use factor weighs heavily in favor of a fair use determination.

**2. Nature of the Copyrighted Work**

The second factor in a fair use inquiry requires the Court to consider the "nature of the copyrighted work."  17 U.S.C. § 107(2). Works that are creative in nature, such as photographs that are meant to be viewed by the public for informative and aesthetic purposes, are closer to the core of intended copyright protection than are more fact-based works.  Kelly, 336 F.3d at 820.  The fact that a work is published or unpublished is also a

critical element of its nature insofar as unpublished works are less likely to qualify as fair use because the author's right to control the first public appearance of his work weighs against the use of his work before its release.  Id.  "The right of first publication encompasses not only the choice whether to publish at all, but also the choices when, where, and in what form first to publish a work."  Harper & Row, 471 U.S. at 564.  When dealing with transformative uses, this factor is not terribly significant in the overall fair use balancing.  See Mattel, 353 F.3d at 803.  In this case, it is undisputed that the Photograph was professionally created and that Calkins' neither intended nor intends to publish the Photograph.  It is further undisputed that the Photograph was not publicly released prior to its appearance in Playboy and that Calkins did not register the Photograph with the Copyright office until after it was published by PEI.  Thus, because Calkins' copyrighted Photograph can fairly be said to be a creative work, see Kelly, 336 F.3d at 820 (finding photographs created by professional photographer to be creative in nature); see also Nunez, 235 F.3d at 23 (finding that modeling photographs could be categorized as either factual or creative even though the photographer posed a model, chose her clothing, makeup and hairstyle, arranged lighting and backdrop, and gave her instructions on facial expression, because the photographs were not artistic

representations designed primarily to express the photographer's ideas, emotions, or feelings, but instead a publicity attempt to highlight the model's abilities as a potential model), and because PEI's publication of the Photograph supplanted Calkins' right to control the first public appearance of the work, this factor weighs against a fair use determination, but only slightly.

### 3. Amount and Substantiality of the Portion Used

The third factor in a fair use inquiry requires the Court to examine the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). While wholesale copying militates against a finding of fair use, the extent of permissible copying varies with the purpose and character of the use. Kelly, 336 F.3d at 820. For instance, if the secondary user only copies as much as is necessary for his or her intended use, such as replicating an entire photograph, then this factor will not weigh against him or her. See id. at 820-21 (finding that this factor did not weigh either for or against either party where the defendant (operator of visual search engine) copied each of plaintiff's images as a whole because it was necessary to do so in order to maintain the usefulness of the visual search engine by allowing users to recognize the image and decide whether to pursue more information about the image or the originating web site). In

this case, the Court finds that this factor does not weigh either for or against a finding of fair use because although PEI copied the entire Photograph, it was reasonable to do so in light of PEI's purpose for using the Photograph.  The extent of the copying was consistent with and to further the "purpose and character of the use," that is, it was necessary for PEI to copy the entire Photograph in order to personalize Shannon by showing Playboy readers how Shannon looked as a high school senior.  To use a lesser portion of the Photograph would have defeated PEI's purpose for using it.

### 4. Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work

The fourth factor in a fair use inquiry focuses on "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor is undoubtedly the single most important element of fair use. Harper & Row, 471 U.S. at 566; Elvis Presley Enterprises, 349 F.3d at 630.  This factor requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original.  Kelly, 336 F.3d at 821 (citing Campbell, 510 U.S. at 590); Elvis Presley Enterprises, 349 F.3d at 631.  The

more transformative the new work, the less likely the new work's use of copyrighted materials will affect the market for the materials. Elvis Presley Enterprises, 349 F.3d at 631. In determining whether the use has harmed the work's value or market, courts have focused on whether the infringing use: (1) tends to diminish or prejudice the potential sale of the work, or (2) tends to interfere with the marketability of the work, or (3) fulfills the demand for the original work. Hustler, 796 F.2d at 1155-56. If a use has no demonstrable effect upon the potential market for, or the value of, the copyrighted work, then such use need not be prohibited in order to protect the author's incentive to create. Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 450 (1984).

In the present case, Calkins contends that PEI's reproduction of the Photograph caused Mother Lode to lose revenue in the form of lost sales of the Photograph. However, it is undisputed that Mother Lode is not in the business of reselling its clients' photographs to third parties. Furthermore, Calkins concedes that she neither intended nor intends to publish the Photograph or otherwise exploit it in any way (e.g., sell or license the Photograph to a third party). Def.'s UMF ¶¶ 55-56, 59-62. Thus, the question of market harm turns on whether PEI's use of the Photograph had a demonstrable effect on Calkins' ability to sell reprints of the Photograph to

Shannon.  In this regard, there is no evidence before the Court indicating that PEI's use of the Photograph had any discernable impact on Shannon's decision not to order reprints of the Photograph.  In fact, it is undisputed that neither Shannon nor anyone else has ordered a reprint of the Photograph since it was created in 1996.  Moreover, because PEI's reproduction of the Photograph is not an adequate substitute for the original (i.e., PEI's reproduced image does not fulfill the demand for the original Photograph), PEI's use of the Photograph does not usurp a market that properly belongs to Calkins.  In short, there is no evidence before the Court demonstrating that PEI's use of the Photograph interfered in any way with the marketability of the work.  Accordingly, because Calkins failed to demonstrate a connection between PEI's use of the Photograph and lost sales, the Court finds that PEI's use did not cause actual market harm. A lack of actual market harm, however, does not end the inquiry under this factor.  The Court must also consider whether unrestricted and widespread conduct of the sort engaged in by PEI would result in a substantially adverse impact on the potential market for the original or its derivatives.  In this regard, the Court finds that Calkins failed to demonstrate how PEI's use of the Photograph would adversely impact the potential market for the original Photograph if PEI's conduct should become widespread.  There is no evidence before the Court

demonstrating how comparable use of the Photograph would harm Calkins' ability to sell reprints to Shannon.  Indeed, if anything, widespread publication of the Photograph would have a positive effect on the potential market for the original Photograph by increasing demand for reprints.  Accordingly, because PEI's use of the Photograph had no demonstrable effect upon the potential market for, or the value of, the Photograph, this factor weighs strongly in favor of a fair use determination.

In sum, after considering the four fair use factors, the Court concludes, on balance, that PEI's use of the Photograph is a fair use.[4]

### III. CONCLUSION

For the reasons stated above, the Court GRANTS PEI's motion.

**IT IS SO ORDERED.**

Dated: May 14, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that PEI's use of the Photograph is a fair use under § 107, the Court need not consider whether Calkins is entitled to statutory damages and attorney's fees under 17 U.S.C. § 412.  The Court also finds it unnecessary to decide PEI's motion to strike Calkins' untimely opposition to PEI's motion for summary judgment.  The Court would note, however, that Calkins filed her opposition two days late and provided no explanation to this Court for the late filing.